UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA CLAY,

                 Plaintiff,             CASE NO: 13-11555
                                      HONORABLE VICTORIA A. ROBERTS
v.

MICHAEL EMMI, Hazel Park Police Officer;
RICHARD STORY, Hazel Park Firefighter/Medic;
MICHAEL SHARROW, Hazel Park Firefighter/Medic;
PAUL VANDENADELLE, Security Personnel at
St. John Oakland Hospital; KEVIN MITCHELL,
Security Personnel at St. John Oakland Hospital; and
ST. JOHN PROVIDENCE HEALTH SYSTEM.,


                 Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.    INTRODUCTION**

      This dispute arises from an incident at St. John Oakland Hospital.  An

ambulance transported Joshua Clay ("Clay") there after his case worker believed he

had a present plan to commit suicide.  Clay claims he was unlawfully restrained,

handcuffed, and tasered.  Defendants Michael Emmi ("Officer Emmi"), Richard Story

("Story") and Michael Sharrow's ("Sharrow") filed a Motion for Summary Judgment.

Defendants Paul Vandenadelle ("Vandenadelle"), Kevin Mitchell ("Mitchell") and St.

John Providence Health System's ("St. John") filed a Motion for Judgment on the

Pleadings.

Clay filed a three-count Complaint against defendants.  Count I alleges violations of 42 U.S.C. §1983 and the 4th and 14th Amendments against Officer Emmi of the Hazel Park Police Department.  Count II alleges negligence against Story and Sharrow; they are both firefighter/medics for the Hazel Park Fire Department.  Count II also alleges negligence against Vandenadelle and Mitchell, security personnel at St. John Oakland Hospital ("St. John").  Count III alleges agency liability/respondeat superior against St. John.

The Motion for Summary Judgment on Count I against Officer Emmi is **DENIED.**

The Motion for Summary Judgment on Count II against Story and Sharrow is **GRANTED**.  The Motion for Judgment on the Pleadings on Count II against Mitchell and Vandenadelle is **GRANTED**.  The Motion for Judgment on the Pleadings on Count II and Count III against St. John is **DENIED**.

## II.   BACKGROUND

On April 8, 2010, Clay spoke with his Easter Seals case worker, Katrina Lorenz ("Lorenz") regarding depression.  Clay says he called Lorenz to tell her he had been having depressive thoughts on a prior occasion, but he was able to use coping mechanisms to handle those thoughts.  Clay insists that at the time of the call, he was no longer depressed.   Nonetheless, Lorenz told Clay she was sending an ambulance to get him.  Lorenz called Hazel Park and requested an officer go to Clay's home.  Lorenz said Clay had a history of hospitalizations and she believed a present plan to commit suicide by slitting his wrists.  Officer Emmi and Sgt. Arthur arrived on the scene.  Medics Story and Sharrow also responded.  Officer Emmi spoke to Clay's mother.  Together,

they located Clay in the back of a van parked in the driveway.  Officer Emmi spoke to

Clay's mother who said her son was bi-polar and had attempted suicide in the past.

Officer Emmi and St. Arthur spoke with Clay and he agreed to go to the hospital.   They

transported him there without incident.

At the hospital, Clay was placed in a curtained off area known as "Minor 9."

Mitchell and Vandenadelle, security officers at St. John Oakland Hospital, arrived.

Story, Sharrow, and Officer Emmi were still present.  Clay was asked to remove his

clothing and put on a hospital gown.

The parties dispute the degree to which Clay refused to cooperate after he was

asked to put on the gown.  Clay says he did not want to put on the gown, and he only

agreed to go the hospital to talk to someone.  Clay says he didn't do anything.

Defendants say Clay got out of the bed and attempted to leave.  Defendants say

Clay's demeanor and body language were aggressive and they decided to stop him.

Story and Sharrow stood on each side of Clay, placed their hands on him and took him

to the ground.  It is unclear how many people were involved in restraining Clay at this

time.  Story testifies that only he and Sharrow were involved in taking Clay down;

Sharrow confirms the two of them grabbed and took Clay down.  Mitchell says he and

Vandenadelle assisted.  Vandenadelle says he and Mitchell were towards Clay's lower

body.  Clay says "many" men were holding him down.  Officer Emmi says Clay

continued to struggle while he was down and Clay was warned that he would be

tasered.  Testimony from the other men at the scene describe resistance from Clay and

note that he was physically imposing.  Officer Emmi says Clay tried to get his arms

away and that he attempted to push himself off the floor to get back up again.  The

3

parties dispute whether Clay was already handcuffed at the time the taser was deployed.  After the taser was used, Defendants helped Clay up and secured him to the bed without further incident.

## III.   STANDARD OF REVIEW

### A.   Motion for Summary Judgment

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

### B.   Motion for Judgment on the Pleadings

The Court applies essentially the same standard of review for judgment on the pleadings as for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir.2011) (citation

omitted).  Although the Court's decision rests primarily on the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may also be considered.  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir.2008).

To survive a Rule 12(c) motion, a plaintiff must provide grounds of entitlement to relief that are more than "labels and conclusions" and "factual allegations must be enough to raise a right of relief above the speculative level. . ." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir.2008) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Id*. Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) quoting *Twombly*, 127 U.S. at 555.

## IV.    ANALYSIS

### A.    Motion for Summary Judgment

#### 1.    Count I: 42 U.S.C. §1983 Claim Against Police Officer Emmi Under the Fourth and Fourteenth Amendments for Excessive Force

Clay says that using force against a neutralized person is objectively unreasonable and when Officer Emmi applied the taser, Clay was handcuffed, on the ground, and with multiple men holding him down.  The parties do not agree as to whether Clay was resisting when the taser was deployed.  Clay says he did not hit or strike Defendants and it is undisputed that he was not being investigated for a violent crime presenting a heightened risk of danger.  Clay also says that even if he did resist,

5

any resistance was *de minimus* at best because he did not make dramatic movements and, therefore, the level of force used was unreasonable.

Officer Emmi says Clay's claim of excessive force fails as a matter of law because Officer Emmi had probable cause to believe Clay posed a danger to himself or others, and he was justified in using a reasonable amount of force to restrain him. Officer Emmi says he does not need to show "dramatic movement" by Clay. Rather, Clay's alleged continued wrestling attempts to leave the hospital and Officer Emmi's inability to contain him through other means warranted the use of the taser.

An official seizing a person for a psychiatric evaluation must have probable cause to believe that the person is a danger either to himself or others. *Monday v. Oullette*, 118 F3d 1099, 1102 (6th Cir. 1997). "A mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition" because "'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts.'" *Id.* at 1102 citing *Illinois v. Gates*, 462, U.S. 213, 232 (1983).

The Fourth Amendment prohibits an arresting officer from using excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court applies an objective reasonableness test, in which the reasonableness of the use of force is considered from the "perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Id.* at 396. The assessment of reasonableness takes into consideration the facts and circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

6

This test is "fact specific, not mechanical." *Wysong v. City of Heath*, 260, Fed.Appx 848, 854 (6th Cir.2008).

Officer Emmi relies heavily on *Monday v. Oullette*, 118 F3d at 1099. In *Monday v. Oullette*, the plaintiff, a large man with a history of depression and substance abuse, called a community health hotline and informed the psychologist that he was drinking while on his medication, a potentially lethal combination. *Id.* at 1101. The psychologist called the police and requested an investigation. *Id.* They arrived to find plaintiff coherent but intoxicated and depressed. Additionally, the police counted the pills from a recently filled prescription and found that approximately twenty were missing. *Id.* Concerned that plaintiff might be suicidal, the police insisted that he go to the hospital. *Id.* The plaintiff repeatedly refused. *Id.* The officer told the plaintiff that if he did not come willingly to the hospital, he would be pepper sprayed. *Id.* The plaintiff said, "Well, I guess you're going to have to spray me," which the officer did. *Id.* Plaintiff was then helped onto a stretcher and taken to the hospital. *Id.*

Officer Emmi argues that circumstances surrounding Clay's transport to the hospital were enough to support a finding of probable cause for a custodial seizure, because he says this case is factually similar to *Monday v. Oullette* and even more compelling because a mental health professional decided there was a substantial probability that Clay might be suicidal; Hazel Park personnel were called to assist; police and EMS on the scene spoke with Clay's mother who confirmed Clay had a mental illness and history of suicide attempts; and Clay was found hiding in a minivan. Officer Emmi says that just as it was reasonable for the officer to use pepper spray in *Monday v. Oullette*, here it was reasonable to use the taser to keep Clay from leaving

7

and to get him to stop resisting.  Clay denies dramatic movements and pushing to get

off the ground.  He says there is no dispute that he was unarmed and did not assault or

attempt to assault anyone. Clay says *Monday v. Oullette* is distinguishable because

Monday admitted to "struggling" with the officers and refusing to go with them.  Clay

says he did not struggle.

> *Monday v. Oullette* is distinguishable.  The parties here dispute whether Clay
>
> was already subdued and handcuffed.  Also, at the time force was used, Clay was on
>
> the ground with at least two, possibly four or five men restraining him.

Whether Clay actively resisted is important; in many cases, it is the test of

whether the application of force is reasonable.   Use of a taser is not a violation of the

Fourth Amendment if a person is actively resisting arrest and refuses to be handcuffed.

*Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012).  On the

other hand, the Sixth Circuit finds that an officer's use of force is excessive if the

suspect was compliant or not resisting.  *Hagans*, 695 F.3d at 509 citing *Kijowski v. City

of Niles*, 372 Fed.Appx. 595 (6th Cir.2010).

In *Kijowski*, the plaintiff appealed the district court's grant of summary judgment

in favor of the defendant police officer.  The Sixth Circuit reversed and remanded,

finding that if plaintiff's version of the facts was correct, the officer's use of force was

unreasonable where plaintiff was dragged from a truck and tasered twice despite no

resistance.  The Sixth Circuit cited *Casey v. City of Federal Heights*, 509 F.3d. 1278,

1285 (10th Cir.2007), finding that use of an electrical stun gun would not be excessive if

a person was actively resisting arrest by kicking and biting.  However, "[a]bsent some

compelling justification – such as the potential escape of a dangerous criminal or the

threat of immediate harm – the use of such a weapon on a non-resistant person is unreasonable." *Kijowki v. City of Niles*, 372 Fed.Appx. at 600 citing *Wysong v. City of Heath*, 260 F. App'x 848, 855 (6th Cir. 2008).

Also important is whether Clay was actively resisting at the time of the application of force. *Landis v. Baker*, 297 Fed. Appx 453 (6th Cir. 2008). Even if a person previously resisted, conduct can be objectively unreasonable if at the time force is used, the person is no longer trying resisting. *Id.* at 458. *See also*, *Roberts v. Manigold*, 240 Fed.Appx. 675 (6th Cir. 2007) (Genuine issue of material fact regarding whether use of force was excessive when taser was used repeatedly while plaintiff was completely pinned and a second officer admits he could have subdued plaintiff without assistance); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004) (Officers not entitled to qualified immunity for pepper spraying and applying pressure to the back of a handcuffed individual, who is known to be mentally ill already lying face down.

Accordingly, even if Clay initially resisted arrest, a reasonable jury could find that when the taser was applied, Clay was effectively subdued considering the number of people present and the possibility that he was handcuffed.

Defendants attach three affidavits to their reply. The first affidavit is from Barbara Bruette, an Emergency Department staff nurse who was present at the time of the incident. The second affidavit is from Dr. Swarup Misra, who treated Clay. The third affidavit is from Psychiatrist Augusto Jamora, who examined Clay after he was admitted to the hospital. The affidavits support Defendants' position that Clay resisted efforts to subdue him. Defendants argue that Clay's version of the facts is blatantly contradicted by the record so that no reasonable jury could believe it. *Kowolonek v. Moore*, 463

9

Fed.Appx. 531, 539 (6th Cir.2012).  In *Kowolonek v. Moore*, - also a summary judgment

case - the only evidence that a taser was used was testimony by a witness whose

testimony was undermined by various weaknesses and contradictions.  Here, there is

no question that a taser was used and the genuine issue of fact is whether at the time

he was tasered, Clay was completely pinned and no longer resisting.  A jury could find

that the use of force was excessive considering that Clay was not under arrest, was

known to be unarmed and did not physically or verbally threaten anyone.  Furthermore,

a reasonable jury could find that the use of the taser was a gratuitous use of force

where as many as five men were immediately available to restrain a person already on

the floor.

Under these circumstances, construing the facts and all reasonable inferences in

the light most favorable to Clay, the Court cannot state, as a matter of law, that the use

of the taser was reasonable.

### 2.      Qualified Immunity and The Michigan Mental Health Code

The Court finds that genuine issues of material fact exist with respect to the issue

of excessive force, and must now decide whether Officer Emmi is entitled to summary

judgment based on qualified immunity.

The purpose of qualified immunity is to balance a plaintiff's right to damages for

constitutional violations against the competing interest of protecting public officers from

overly burdensome lawsuits.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Therefore, to hold a public officer accountable, the right the defendant is charged with

violating must be both clearly established and one which a reasonable person would

10

have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Although it need not be the case that 'the very action in question has previously been held unlawful, ... in the light of pre-existing law the unlawfulness must be apparent.'"  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

Officer Emmi says he is entitled to qualified immunity because his actions were reasonable in light of the rapidly evolving situation.  Officer Emmi also says that since *Monday v. Oullette* is so factually similar, a reasonable officer would not have been on notice that his conduct was objectively unreasonable.

The right to be free from physical force when one is not resisting is clearly established by the Sixth Circuit.  *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008).  At the time of the incident, case law held that excessive force on an unresisting person is unreasonable.  This is sufficient to put Officer Emmi on notice. Here, there is a genuine issue of fact regarding whether Clay was resisting and whether he was handcuffed.  In these circumstances, qualified immunity cannot be granted as a matter of law.  *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir.1989) (holding that while the court determines the law to be applied, the jury must decide whether the defendant is entitled to immunity when immunity turns upon which view of the facts is accepted).

Defendant Emmi says that the Michigan Mental Health Code allows a peace officer to use force when taking an individual into protective custody if it appears that the individual requires treatment.  MCL §330.1427 and §330.1427a.

§330.1427a(1) provides:

(1) If a peace officer is taking an individual into protective custody, the

11

peace officer may use that kind and degree of force that would be lawful if the peace officer were effecting an arrest for a misdemeanor without a warrant. In taking the individual into custody, a peace officer may take reasonable steps for self-protection. The protective steps may include a pat down search of the individual in the individual's immediate surroundings, but only to the extent necessary to discover and seize a dangerous weapon that may be used against the officer or other persons present. These protective steps shall be taken by the peace officer before the individual is transported to a preadmission screening unit or a hospital designated by the community mental health services program.  Mich. Comp. Laws Ann. § 330.1427a.

Factual issues regarding whether the degree of force used was reasonable preclude a judgment that Officer Emmi's actions were lawful.  *Brandenburg v. Cureton*, 882 F.2d at 216.  This matter will proceed to trial on the issue of excessive force by Officer Emmi.  The Motion for Summary Judgment on Count I against him is **DENIED**.

### 3.     Count II: The Hazel Park Firefighter/Medics and Governmental Immunity

Defendants say there are two possible statutory sources under which Story and Sharrow have governmental immunity.  First, by statute, government employees are "generally immune from tort liability" if the "conduct does not amount to gross negligence that is the proximate cause of the injury or damage."  *Smith v. County of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010); Mich. Comp. Laws Ann. §691.1407(2)(c). Secondly, a separate Michigan statute, the Michigan Emergency Medical Services Act, provides immunity for first responders.  Mich. Comp. Laws. Ann. §333.20901 *et. seq.*

#### a.     The Michigan Emergency Services Act

This statute, MCLA §333.20965(1), provides in part:

(1) Unless an act or omission is the result of gross negligence or willful misconduct, the acts or omissions of a medical first responder, emergency medical technician, emergency medical technician specialist, paramedic,

12

medical director of a medical control authority or his or her designee, or, subject to subsection (5), an individual acting as a clinical preceptor of a department-approved education program sponsor while providing services to a patient outside a hospital, in a hospital before transferring patient care to hospital personnel, or in a clinical setting that are consistent with the individual's licensure or additional training required by the medical control authority including, but not limited to, services described in subsection (2), or consistent with an approved procedure for that particular education program do not impose liability in the treatment of a patient on those individuals or any of the following persons:

(e) The hospital or an officer, member of the staff, nurse, or other employee of the hospital.

Additionally, section 333.20965 (4) notes that subsection (1) above does not limit immunity from liability otherwise provided by law.

The Michigan Emergency Medical Services Act was designed to limit liability of first responders when they are acting "in treatment" of a patient. *Lee v. Dowagiac Volunteer Fire Dep't Ambulance Serv., Inc.*, 289605, 2010 WL 2332391, *1 (Mich. Ct. App. June 10, 2010). In an unpublished opinion, the Michigan Court of Appeals says the statute does not define "treatment." The court looked to the dictionary which defines "treatment" as "the application of medicines, surgery, therapy, etc., in treating a disease or disorder." *Id.* quoting *Random House Webster's College Dictionary* (1997).

The Court held that transportation and transfer of a patient in need of emergency medical care is "treatment" under the statute when emergency providers were called to the home of the plaintiff, evaluated his situation, administered medical services to him at his home, decided he should go to the hospital, moved him to an ambulance, and continued to provide care on the way to the hospital. *Id.* The court specifically noted that on these facts, "[t]his is not a case of merely transporting a patient from one

13

location to another."  *Id.* at *1.

The Court disagrees that Story and Sharrow are immune from liability under this statute.  Sharrow testified that during the ambulance ride, he asked Clay standard questions regarding his allergies, current medications, and basic medical history.  There is nothing in the record which suggests either Sharrow or Story administered any medical treatment either at Clay's home, during transport, or at the hospital.

Based on the record, the Court finds that Sharrow and Story merely transported Clay and did not provide "treatment" under §333.20965(1).

**b.     Governmental Immunity**

The Court next reviews Plaintiff's allegations under MCLA §691.1407 to determine whether that statute provides immunity to Story and Sharrow.  The Court finds that it does.

§691.1407(7)(2) and (3) set forth government immunity for individuals.  However, unlike the Michigan Emergency Medical Services Act - which limited liability for first responders who were rendering "treatment" to individuals - §691.1407 provides immunity unless the government agent/employee is providing medical care or treatment.

§691.1407(7)(2) and (3) provide in part:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf

14

of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

(3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

§691.1407(7)(4) is the section that excludes immunity for acts taken with respect to providing medical care or treatment and says:

"This act does not grant immunity to a government agency or an employee or agent of a governmental agency with respect to providing medical care or treatment to a patient, except medical care or treatment provided to a patient in a hospital owned or operated by the department of community health or a hospital owned or operated by the department of corrections and except care provided by an uncompensated search and rescue operation medical assistant or tactical operation medical assistant."

Immunity from tort liability is expressed in very broad language that "extends to all governmental agencies and applies to all tort liability when governmental agencies are engaged in the exercise or discharge of governmental functions." *McLean v. McElhaney*, 289 Mich. App. 592, 598 (2010).  Exceptions to governmental immunity are narrowly construed; Michigan courts have applied a narrow definition of the phrase "medical care or treatment," no defined by the statute.  *Id.* citing *Stanton v. Battle Creek*, 466 Mich. 611, 618 (2002) (Noting that while the legislative immunity granted to governmental agencies and their employees is broad, it is subject to five narrowly drawn statutory exceptions).  The term "'Medical care or treatment' includes care and treatment for mental illness or disease."  *McLean v. McElhaney*, 289 Mich.App. at 604.

15

Accordingly, if Story and Sharrow were providing medical care or treatment to Clay, they would not be immune from tort liability.

Construing the medical exception narrowly, the Court finds that Sharrow and Story were merely transporting Clay from one location to another, and did not provide treatment to him. Since they did not provide medical care or treatment, under §691.1407(2)(c), Sharrow and Story are immune from liability unless their conduct amounts to gross negligence. "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury occurs." MCL 691.1407(8)(a). Generally, once a standard of conduct is established, the reasonableness of conduct under that standard is a question for the factfinder. *Tallman v. Markstrom,* 180 Mich.App. 141, 144 (1989). "However, if, on the basis of the evidence presented, reasonable minds could not differ, then the motion for summary disposition should be granted." *Vermilya v. Dunham,* 195 Mich.App. 79, 83 (1992).

Sharrow and Story say they are entitled to governmental immunity because Clay has only pled ordinary negligence, not "gross negligence." Defendants say Clay cannot identify either Sharrow or Story as the proximate cause of any injury. Clay says any failure to properly plead gross negligence against Story and Sharrow is not intentional; he asks permission to amend the complaint, if necessary. Clay says reasonableness of conduct is a question for the jury and that Defendants' disregard for substantial risks and "blatant and wilful disregard" for his safety rise to the level of gross negligence.

Both parties concede that Clay did not want to put a hospital gown on and that he walked away from the hospital bed. In response, Sharrow and Story stopped Clay from leaving, and with one person on each side of him, grabbed him and lowered him to the

16

floor. Clay says the actions of both defendants were negligent and that they "negligently battered and injured Plaintiff." (Doc. #1 at p.6). Viewing all facts in a light most favorable to Clay, the Court finds that Defendants' conduct is not so reckless as to demonstrate a substantial lack of concern for whether an injury occurs. *McVay ex rel. Estate of McVay v. Sisters of Mercy Health Sys.*, 399 F.3d 904, 908-09 (8th Cir. 2005) (grant of summary judgment affirmed and security guard not liable for excessive force even if he tackled plaintiff, when plaintiff was disoriented and barreling toward glass doors and events were rapidly evolving).

Clay's claims against Sharrow and Story are barred by the immunity provision of §691.1407(2). The Motion for Summary Judgment on Count II against Story and Sharrow is **GRANTED**.

### c.      Request for Costs and Fees

Defendants Emmi, Story and Sharrow request an award of costs and fees, including attorney fees. In its discretion, the Court concludes that such an award is not warranted under the circumstances; Defendants' request is denied.

### B.      Motion for Judgment on the Pleadings

#### 1.      Count II – Negligence Against Security Personnel Vandenadelle, Mitchell and St. John Providence Health System

Defendants say Clay failed to state a claim upon which relief can be granted because "negligent battery" is not a cognizable claim under Michigan law. Clay responds by saying that he pleaded a claim for general negligence which is proper. Clay concedes that he used the term "negligently batter" but asserts that he also

17

included general claims of negligence in Count II.   Clay says his testimony along with Mitchell's and Vandenadelle's, creates a question of fact regarding whether the action of taking down and pinning him constitutes negligence.  Clay says he will amend the complaint to remove the term "negligently batter" and replace it with the words "negligently acted" if necessary.  Importantly, his theory appears to be one of negligence.

In determining whether Clay has properly pled a claim for negligence, the Court does not rely solely on labels in the complaint; but as the Sixth Circuit directs, looks deeper and examines "the substance of the complaint."  *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001).  Defendants correctly point out that under Michigan law, "the tort of assault and battery by gross negligence does not exist*.*"  *Sudul v. City of Hamtramck*, 221, Mich.App. 455, 461 (1997).  *Sudul* involved erroneous jury instructions in which the verdict form asked whether the officers had assaulted or battered the plaintiff by an act of gross negligence.  Here, Clay titled Count II simply as "negligence" and does not reference "gross negligence."  Within the body of the Complaint, Clay uses the term "negligently battered and injured" to refer to the Defendants' conduct.  The issue before the Court is whether Clay properly pled a claim for negligence, or incorrectly labeled a claim that is in substance an intentional tort.

Michigan law does not allow a plaintiff to maintain a negligence claim for intentional actions.  *Thiel v. Sterling Heights*, No. 09-12399, 2010 WL 3170510 (E.D. Mich. Aug. 10, 2010), citing *VanVorous v. Burmeister,* 262 Mich.App. 467, 483 (Mich.Ct.App.2004).  In *Thiel v. Sterling Heights*, the plaintiff alleged gross negligence in the shooting of his brother.  The court, applying Michigan law, found that nothing in the

18

record suggested the shooting was accidental and the parties did not dispute factually that the police intentionally aimed and shot the victim.  The court granted judgment on the pleadings in favor of the defendants.

In *Smith v. Stolberg*, the Michigan Court of Appeals affirmed the trial court's grant of summary disposition on plaintiff's negligence claim because the proper cause of action was the intentional tort of battery - not negligence.  *Smith v. Stolberg*, 231 Mich.App. 256, 259 (1998).  The court noted that while the plaintiff "couches his claim in terms of breach of defendant's duty," the plaintiff essentially alleged an intentional and offensive touching.  *Id.* at 259.

The Court agrees with defendants that under these facts the proper cause of action under Michigan law is battery.  Clay labeled and pled the elements of negligence: (1) he was owed a duty of care; (2) this duty of care was breached; (3) causation; and (4) damages.  *Smith v. Stolberg*, 231 Mich. App. at 258.  However, an examination of the pleadings makes clear that the claim against the two security guards stems from their actions in taking Clay to the ground and holding him down once he was on the ground.  Like the plaintiff in *Smith v. Stolberg*, Clay's claim of negligence is based on an intentional offensive touching.  Therefore, Clay's proper cause of action is for battery, not negligence.  Defendants' Motion for Judgment on the Pleadings on Count II against Mitchell and Vandenadelle is **GRANTED**.

> **2.    Count II: Negligence Against St. John and Count III: Agency Liability/Respondeat Superior Against St. John Providence Health System**

Clay says St. John is vicariously liable for the acts of its employees under the

19

doctrine of *respondeat superior*. Defendant says if there is no claim against Mitchell or Vandenadelle, it follows that Clay failed to state a claim upon which relief can be granted against St. John.

Defendant says an employer is not liable if the employee is not liable and cites to *Rogers v. JB Hunt Transport, Inc.*, 466 Mich. 645, 651 (2002). In *Rogers*, the Supreme Court of Michigan addressed whether an employer is precluded from contesting its vicarious liability under default judgment principles. *Id.* at 647. *Rogers* involved an automobile accident in which the plaintiff sued the driver and the owner of a tractor-trailer. *Id.* at 648. The driver failed to litigate the claim and a default judgment was entered against him. *Id.* at 649. The court emphasized that the entry of default was for failure to participate in litigation and does not establish that he was actually negligent. *Id.* at 654. The court held that when the sole source of liability is vicarious, a default judgment entered against the employee does not preclude the employer from contesting vicarious liability. *Id.* at 655.

Clay also cites to *Rogers*, and a second case, *Green v. Shell Oil Co.*, 181 Mich.App.439, 447 (1989) for the proposition that as a general rule, an employer is liable for the wrongful acts of his employee committed within the scope of employment, and the trier of fact determines whether an employee is acting within the scope of his employment – an issue not contested in the motion before this Court.

A motion for judgment on the pleadings is proper when taking all well-pleaded material allegations of the pleadings of the opposing party as true, the moving party is nevertheless clearly entitled to judgment. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d at 240. St. John fails to meet its burden that it is clearly

20

entitled to judgment regarding the claims against it.  In deciding that Clay's proper cause of action is on a battery theory rather than a negligence one, this Court does not reach the merits of whether Mitchell and Vandenadelle were negligent.  St. John's motion concedes that whether the security guards' actions were excessive is not relevant to this motion.

Clay alleges multiple theories of negligence against St. John – that in addition to being liable for actions taken by the security guards, that St. John is also negligent for negligent hiring, delegation of responsibilities, training, supervision, and inadequate policies as well as other ways in which Clay says is to be determined through discovery. Defendant failed to provide authority or meaningful analysis regarding whether it is entitled to judgment on the pleadings under each of these theories.  Defendant's Motion for Judgment on the Pleadings on Count II and Count III against St. John is **DENIED**.


**III.   CONCLUSION**

Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  The Court **DENIES** the Motion for Summary Judgment (Count I) against Officer Emmi.

The Court **GRANTS** Defendants' Motion for Summary Judgment on Count II (negligence) against Story and Sharrow based on qualified immunity.  Count II is **DISMISSED**.

Defendants' Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**.  The Court **GRANTS** the motion with respect to Mitchell and

21

Vandenadelle and **DISMISSES** Count II (negligence) against Mitchell and

Vandenadelle.  Defendants' Motion for Judgment on the Pleadings is **DENIED** on Count

II (negligence) and Count III (agency liability/respondeat superior) against St. John.

Request for Costs and Attorney Fees is **DENIED.**

Story, Sharrow, Mitchell and Vandenadelle are **DISMISSED** from this case.

This matter will **PROCEED** to trial on Count I (4th and 14th Amendment claims)

against Officer Emmi and Counts II and III against St. John.

**IT IS ORDERED**.


S/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  September 30, 2014

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 30, 2014.<br><br>s/Linda Vertriest_____<br>Deputy Clerk |